J. F. JONES v. NATIONAL COTTON OIL COMPANY.

Decided February 9, 1903.

1.—Contract—Law of Another State—Statute of Frauds.

A contract made and to be performed in Arkansas, but obnoxious to the statute of frauds of that State, will not be enforced by the courts of Texas, although if made or performable here it would be a valid contract.

2.—Same—Part Performance.

Where the contract was for the purchase of certain feed for cattle, the fact that the buyer incurred expense in gathering cattle, building pens, etc., depending on plaintiff's compliance with the contract, was not such part performance as would take the contract out of the statute of frauds.

Appeal from the District Court of Bowie. Tried below before Hon. J. M. Talbot.

*P. A. Turner,* for appellant.

*Glass, Estes & King* and *Scott & Head,* for appellee.

RAINEY, CHIEF JUSTICE.—Appellant sued to recover of appellee damages for the alleged breach of an oral contract by the terms of which appellee was to deliver to appellant cotton seed hulls and meal at a specified price. The defendant plead the law of Arkansas, under the provisions of which no recovery could be had in that State. A trial was had before the court without a jury and judgment rendered for defendant.

*Conclusions of Fact.*—The conclusions of fact of the trial court are supported by the evidence and same are adopted by this court. They are as follows:

"1. I find that the plaintiff and the defendant about the 1st day of September, 1901, entered into a contract whereby the defendant agreed to furnish and deliver to plaintiff the cotton seed meal and hulls described in plaintiff's petition. That defendant afterwards refused to deliver said meal and hulls to plaintiff. That the plaintiff agreed to pay, and the defendant agreed to accept $3 per ton for the hulls and $18 per ton for meal.

"2. That plaintiff failed to get said hulls and meal from defendant, and that the difference in price to be paid, and the price he had to pay for such hulls and meal in order to feed his stock which he had gathered, amounts to $1229.70, and that plaintiff, by reason of the refusal of defendant to deliver said meal and hulls, has been damaged in said sum.

"3. I find that the defendant held out M. F. Bonham as its authorized agent, and I find that he was authorized by defendant to make said contract.

"4. I find that said contract was made and was to be entirely performed in the State of Arkansas.

"5. I find that the law of Arkansas relating to the making, construc-

tion and enforcement of said above contract is section 3740 of the statutes and laws of Arkansas, and is as follows: 'No contract for the sale of goods, wares and merchandise, for the price of $30 or upwards, shall be binding upon the parties, unless, first, there be some note or memorandum signed by the party to be charged; second, the purchaser shall accept a part of the goods so sold, and actually receive the same; or third, shall give something in earnest to bind the bargain or in part payment thereof.' And said law is in force now, and was in force when said contract was made.

"6. I find that no memorandum or note of said contract or.sale was signed by either of the parties to this suit; that the purchaser, the plaintiff, did not accept and actually receive any part of said hulls and meal; and the plaintiff did not give anything in earnest to bind the bargain or in part payment thereof.

"7. I find that plaintiff did not perform any part of the said contract. That he was willing, and demanded its performance, but that defendant refused to do so. The plaintiff was willing to perform his part of it."

*Opinion.*—The contract, for a breach of which a recovery is sought,. was made in Arkansas and was to be performed there. By the laws of that State it was not enforcible there. Such a contract if made and performable in this State would be enforcible. The question then is, will the courts of this State grant relief under the circumstances, notwithstanding none could be had in Arkansas, where the contract was made and was to be performed?

The provision of the law of Arkansas affecting the contract reads: "No contract for the sale of goods, wares and merchandise, for the price of $30, or upwards, shall be binding on the parties unless, first, there be some note or memorandum signed by the party to be charged; or second, the purchaser shall accept a part of the goods so sold and actually receive the same; or third, shall give something in earnest to bind the bargain or in part payment thereof."

The contention of appellant, in substance, is that said law does not affect the validity of the contract, but that it only prescribes the kind of evidence by which it must be proved, and therefore, the contract being of such a nature as would be enforcible in this State if made here, the courts will enforce it here, though it could not be enforced in Arkansas. In other words, that the law of Arkansas does not affect the right, but only the remedy. Appellant cites numerous authorities to support this contention, which hold, in effect, that a valid contract entered into in one State and enforcible there will not be enforced in another State where the statutes of fraud would prevent a recovery. The authorities on this proposition are.not in harmony, many of the States holding, in effect, that a contract not obnoxious to the statute of fraud where made or to be performed will be enforced, though if made in those States would be obnoxious .to such statutes. Miller v. Wilson, 146 Ill., 523; Gring v.

Vanderbilt, 13 N. Y. St., 457; Eldridge v. Heaton, 7 Ohio Civ. Ct., 499; Allshouse v. Ramsey, 37 Am. Dec. (Pa.), 417; Anderson v. May, 57 Tenn., 84; Forward v. Harris, 30 Barb., 338; Ringgold v. Newkirk, 3 Ark., 96; Scudder v. Bank, 91 U. S., 406; Houghtaling v. Ball, 20 N. W. Rep., 563.

In this State a contract made in another State and enforcible there will be enforced in this State, though, if made here, it would not be enforcible. Ryan v. Railway, 65 Texas, 13; Thomas v. Telegraph Co., 25 Texas Civ. App., 398, 61 S. W. Rep., 501. But no case is cited, and we know of none, which holds that a contract not binding in the State where made and performable will be enforced in another State, though if made in the latter it would be enforcible.

The validity and enforcement of a contract must be tested by the laws of the State where made and performable. In Life Association v. Harris, 94 Texas, 35, our Supreme Court say: "The leading principle is that the law is to govern to which 'it is just to presume they (the parties) have intrusted themselves.' Unless a contrary intent is to be deduced from the transaction, the presumption is that the parties contracted with reference to the law of the place where the contract was made; but if they have fixed a different place for the performance of it, the law of that place is to govern, unless something else appears showing they had a different intention."

In Shelton v. Marshall, 16 Texas, 354, it is said: "It is a universal principle that a contract which is invalid by the law of the State where made will be held to be invalid in all other places or countries where it may be drawn in question."

In Canter v. Bennett, 39 Texas, 310, it is said: "A contract not valid where made, is valid nowhere else. As contracts relate either to movable or immovable, or to use the phraseology of our own law, to personal or to real property, the following distinction is taken: if the contract refers to personal property, the place of the contract governs, by its laws, the construction and effect of the contract."

In Shreck v. Shreck, 32 Texas, 588, the court say: "It is certainly a general principle that in judicial actions upon contracts the law of the place where the contract was made governs in determining its construction, obligation and enforcement, its validity or invalidity."

Story on Conflict of Laws, 7 ed., sec. 262, says: "Thus, by the English and American law, contracts which fall within the purview of what is called the statute of frauds, are required to be in writing; and such are contracts respecting the sale of lands, contracts for the debts of third persons, and contracts for the sale of goods beyond a certain value. If such contracts made by parol, per verba, in a country by whose laws they are required to be in writing, are sought to be enforced in any other country, they will be held void, exactly as they are held void in the place where they are made. And the like rule applies vice versa where parol contracts are good by the law of the place where they are made."

In Cochran v. Ward, 29 N. E. Rep., 795, a well considered case where

the same contention was made as here, the court say: "But it is insisted that as to mere matters of procedure every forum must apply its own laws and rules, regardless of the character of the action, and to a certain extent we think this must be true. In the case before us, however, under the findings of the jury, the place of the contract and the situs are the same, and the judgment of the trial court must be upheld, unless we regard the statute of frauds as relating merely to the procedure, and not as affecting the obligatory character of the agreement. It is impossible to consider a contract separately from the remedy given by law for its enforcement, because it is this that supplies it with legal vitality. The law is an essential factor in every contract, and is presumed to be considered by the parties in their deliberation. If the law of the place stamps upon an agreement the quality that it shall be voidable, and that its performance shall be a pure matter of conscience or grace with the parties, that quality becomes a part of the substance of the agreement, and characterizes it wherever it may be. A right without a remedy for its enforcement is mere fiction."

In Edwards v. Kearzey, 96 U. S., 596, it is said: "It is also the settled doctrine of this court that the laws which subsist at the time and place of making a contract, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This rule embraces alike those which affect its validity, construction, discharge and enforcement. * * * The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than its means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in view of the law, ceases to be, and falls in the class of those imperfect obligations, as they are termed, which depend for their fulfillment upon the will and conscience of those upon whom they rest. The ideas of right and remedy are inseparable. Want of right and want of remedy are the same thing. There can be no doubt, we think, to the extent that the remedy that affects the validity and obligation of a contract, it is imported into and becomes an essential part of it, and characterizes it whenever it is the subject matter of litigation. The Illinois statute of frauds became a part of the agreement in suit, and the provision that no action should be maintained for damages for breach of the agreement become as much a part of its character and substance as if specifically incorporated therein. The right to defend against a contract growing out of any of its inherent qualities, becomes vested, and a right of property, as much as the right to enforce any other beneficial provision."

In Pritchard v. Norton, 106 U. S., 129, it is said: "The principle is, that whatever relates merely to the remedy and constitutes part of the procedure is determined by the law of the forum, for matters of process must be uniform in the courts of the same country, but whatever goes to the substance of the obligation and affects the rights of the parties, as growing out of the contract itself, or inhering in it or attaching to it, is governed by the law of the contract."

As we have seen, contracts are governed by the law of the place of their performance. By the law of Arkansas the contract was not binding, and could not be enforced against the party invoking the law. Either party had the right by virtue of that provision to prevent its enforcement; therefore its performance was left to the conscience of either party, from which it follows, we think, that this right inhered in or attached to the contract.

But it is argued that in Arkansas the courts would enforce such a contract, unless the provision of the law was invoked in the proceeding, and hence it did not affect the right, but the remedy. Such might be said of many defenses that prevent the enforcement of many illegal contracts. A consideration is essential to the validity of a contract, yet to defeat a contract for that reason a failure of it must be specifically pleaded. So of infancy. So of the statute of limitation, etc. All these affect the right and not the remedy. A "defense or discharge good by the law of the place where the contract is made or is to be performed, is to be held of equal validity in every place where the question may come to be litigated." Story on Conflict of Laws, sec. 331; Ryan v. Bouton, 10 Texas, 62.

No case, so far as we are advised, has arisen in this State where the courts have passed upon the question as to the right to enforce a contract obnoxious to the statutes of fraud of the State where made and performable. But in several instances they have refused relief where no remedy existed at the place of the transaction. Telegraph Co. v. Preston, 54 S. W. Rep., 650; Thomas v. Telegraph Co., 25 Texas Civ. App., 398, 61 S. W. Rep., 501.

We are of the opinion that the contract was subject to the laws of Arkansas, and the appellee was entitled to interpose any defense to an action thereon in this State that was effectual in that State.

Appellant complains that the court erred in its findings of fact that the contract was performable in Arkansas. The evidence supports the finding, and there is no error therein.

It is insisted that because appellant performed certain acts and expended certain sums of money in gathering cattle, buying lumber, building pens, making troughs, etc., depending upon the appellee complying with the contract, he is entitled to recover. The suit is upon the breach of a contract for the delivery of hulls and meal at a stipulated price, and the damages sought is for the difference between the agreed price and what he had to pay. The doing of the acts stated was in no sense a part performance of the contract entered into, and does not take the contract out of the statute of frauds. Ray v. Young, 13 Texas, 552; Cross v. Evarts, 28 Texas, 535; Osborne v. Kimball, 21 Pac. Rep., 163.

The judgment is affirmed.

*Affirmed.*